[No. C066092. Third Dist. Nov. 28, 2011.]

TAMMY COLLINS et al., Plaintiffs and Appellants, v. EMACHINES, INC., et al., Defendants and Respondents.

## COUNSEL

Stern, Van Vleck & McCarron, Jennifer K. Whipple; G. Kip Edwards; and James B. Brown for Plaintiffs and Appellants.

Kroloff, Belcher, Smart, Perry & Christopherson, Gary Christopherson, Kathleen Abdallah; Akin, Gump, Strauss, Hauer & Feld, James J. Scheske and Rex S. Heinke for Defendants and Respondents.

Arbogast Bowen and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae.

Lieff, Cabraser, Heimann & Bernstein and Elizabeth J. Cabraser for Consumers for Auto Reliability and Safety as Amicus Curiae.

## OPINION

**BUTZ, J.**—In this class action alleging a failure to disclose a computer defect involving a microchip that controlled floppy disk data transmission, plaintiffs Tammy Collins and Rudolph Roma appeal from a judgment on the pleadings. Plaintiffs have alleged counts under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200, 17500 et seq.), common law fraud, and unjust enrichment.

We conclude the trial court erroneously granted judgment on the pleadings without leave to amend, and we shall reverse on all counts except unjust enrichment.

### FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing a successful motion for judgment on the pleadings, and there are no pertinent judicially noticeable facts to consider, our review is confined to the complaint. (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 972 [14 Cal.Rptr.3d 787] (*DiPirro*).) We consider independently whether the complaint states a cause of action, accepting as true all allegations of material fact but not contentions, deductions or conclusions of fact or law. (*Ibid.*) "Where, as here, leave to amend was not granted, we determine whether the [pleading] defect can reasonably be cured by amendment. . . . We review the court's denial of leave to amend for abuse of discretion." (*Ibid.*)

The complaint here consists of (1) a first amended complaint (FAC), which made minor, irrelevant modifications to the original complaint and (2) a proposed second amended complaint (SAC), which the trial court refused to consider after granting—without leave to amend—the motion for judgment on the pleadings involving the FAC.

The FAC was filed in June 2005, before defendants eMachines, Inc., Gateway Sub II, LLC, and Gateway, Inc. (collectively, eMachines), had responded to the original complaint, which was filed in February 2005.

Consequently, the FAC was the first complaint subjected to the testing process of demurrer or judgment on the pleadings.

*First Amended Complaint*

The FAC alleges as follows:

The FAC is a class action on behalf of the named plaintiffs and similarly situated California residents (plaintiffs) who purchased approximately 400,000 defective eMachines personal computers after October 31, 1999.[1]

At the time eMachines marketed and sold the defective computers, floppy disks provided the primary means of storing and transporting computer data. Each of the eMachines computers contained a defective microchip, called a "Super I/O" chip, which controlled the operation of the floppy disk drives. Basically, this floppy disk controller defect (FDC Defect) improperly wrote data to, and improperly read data from, floppy disks, resulting in data corruption; specifically, the problem was that the FDC Defect failed to detect the miswriting or the misreading of a segment (a byte) of data at a specific point on the floppy disk, and incapacitated the very function that was to correct such corruption.

No later than October 31, 1999, eMachines discovered the FDC Defect in its computers.

Each of the defective computers had a written warranty that they were "free from defects in materials and workmanship under normal use for a period of [one] year from the date of purchase."

eMachines failed to disclose and actively concealed the FDC Defect from potential purchasers. Despite knowing of the FDC Defect and knowing that the defect could result in critical data corruption, executives of eMachines directed the company to continue to sell the defective computers after October 31, 1999. eMachines actively concealed the existence of the FDC Defect from purchasers by, among other practices specified in the FAC, continuing to issue the warranty knowing the computers had the FDC Defect, and engaging in misleading "customer service" practices that concealed the FDC Defect in online "customer support" guides, in customer service diagnoses of computer problems, and at call centers.

As a result of eMachines's fraudulent concealment, plaintiffs suffered out-of-pocket damages—i.e., the difference between the purchase price of the computers and their fair market value with the FDC Defect (which was essentially zero).

---

[1] The proposed SAC puts the purchase figure at 600,000 defective computers.

Based on the fraudulent concealment, plaintiffs alleged four counts against eMachines: (1) a violation of the CLRA (Civ. Code, § 1750 et seq.); (2) a violation of the UCL (Bus. & Prof. Code, § 17200 et seq.; this claim also encompassed a violation of the False Advertising Act (Bus. & Prof. Code, § 17500 et seq.); (3) common law fraudulent concealment; and (4) unjust enrichment.

*Proposed Second Amended Complaint*

The proposed SAC repeats the substantive allegations of the FAC and adds the following two pertinent allegations:

First, both named plaintiffs suffered data loss and missing files when using their floppy disk drive, before the warranty expired. Plaintiff Roma experienced cross-computer corruption when he transferred work files to and from work on floppy diskettes.

Second, the FDC Defect resulted from missing hardware on the microchip—either in the form of wire gates or microcode embedded on the chip—that industry standards required. This was not a situation where the microchip was complete and operational when sold but wore out or broke down over time because of use and wear and tear.

*Procedural Background*

As noted, plaintiffs filed the FAC in June 2005 before eMachines responded to the original February 2005 complaint.

In October 2005, the trial court granted eMachines's motion to stay the FAC, pending related class action lawsuits in two other states.

The trial court lifted the stay in March 2009, upon plaintiffs' request. eMachines then answered the FAC and later moved successfully for judgment on the pleadings.

In granting judgment on the pleadings in July 2010, the trial court ruled in total: "Plaintiffs do not and cannot allege any injury in fact resulting from defendants' conduct, and plaintiffs do not and cannot allege facts supporting any of the alleged causes of action. Therefore the Court grants judgment on the pleadings in favor of defendants as to plaintiff's [*sic*] [FAC] and as to each of the causes of action alleged therein and judgment is granted without leave to amend the complaint."

Plaintiffs did not submit the SAC to the trial court in opposing eMachines's motion for judgment on the pleadings. Instead, plaintiffs moved unsuccessfully for reconsideration of the ruling denying leave to amend, requesting leave to file the proposed SAC.

As will become evident in the following discussion of the counts, we find the trial court abused its discretion in granting judgment without leave to amend, because plaintiffs showed the FAC could be cured by amendment. (*DiPirro, supra,* 119 Cal.App.4th at p. 972.) In our Discussion, when we refer to "the complaint" we are referring to the proposed SAC.

## DISCUSSION

### I. The Complaint States a Violation of the CLRA

The CLRA proscribes particular "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods or services to consumers. (Civ. Code, § 1770, subd. (a); see *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 833 [51 Cal.Rptr.3d 118] (*Daugherty*).)

Plaintiffs allege in the complaint that eMachines's active concealment of and failure to disclose the FDC Defect violated the CLRA's particular proscriptions against (1) representing that goods have characteristics which they do not have (Civ. Code, § 1770, subd. (a)(5)); (2) representing that goods are of a particular standard or quality if they are of another (*id.,* subd. (a)(7)); and (3) advertising goods with the intent not to sell them as advertised (*id.,* subd. (a)(9)).

These deceptive practices proscribed in the CLRA include the concealment or suppression of material facts. (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 37 [124 Cal.Rptr. 852]; *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 185 [105 Cal.Rptr.3d 704].) This is because fraud or deceit encompasses the suppression of a fact by one who is bound to disclose it, or the suppression of a fact that is contrary to a representation that was made. (*Outboard Marine,* at p. 37; *McAdams,* at p. 185; Civ. Code, § 1710, subd. 3.)

A failure to disclose a fact can constitute actionable fraud or deceit in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336

[60 Cal.Rptr.2d 539]; see also *Falk v. General Motors Corp.* (N.D.Cal. 2007) 496 F.Supp.2d 1088, 1094–1095 (*Falk*).)

Here, the complaint alleges a CLRA violation under the failure to disclose factors Nos. (2) and (3) of *LiMandri*.

■ In the CLRA context, a fact is deemed "material," and obligates an exclusively knowledgeable defendant to disclose it, if a " 'reasonable [consumer]' " would deem it important in determining how to act in the transaction at issue. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977 [64 Cal.Rptr.2d 843, 938 P.2d 903]; see *Falk, supra,* 496 F.Supp.2d at p. 1095, citing Cal. cases.) At the time the allegedly defective eMachines computers were marketed and sold, floppy disks provided the primary means of storing and transporting computer data. According to the complaint, the alleged FDC Defect could and did corrupt computer data. A reasonable consumer would certainly attach importance to the disclosure of the FDC Defect. Furthermore, according to the complaint, eMachines knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover. The complaint also alleges active concealment on eMachines's part through corporate directives to continue selling the defective computers, and through a customer service campaign designed to preclude consumer discovery of the FDC Defect.

eMachines argues that *Daugherty, supra,* 144 Cal.App.4th 824 and *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255 [39 Cal.Rptr.3d 634] (*Bardin*) foreclose a CLRA count here. eMachines is mistaken. This case is unlike those two.

In *Daugherty*, the plaintiffs alleged that defendant Honda failed to disclose an engine defect that could cause an oil leak malfunction long after the warranty expired. The engines at issue were warranted for three years or 36,000 miles, whichever came first, and the defect, which was latent and not related to safety, did not manifest itself, if at all, until long after these warranty limits. (*Daugherty, supra,* 144 Cal.App.4th at pp. 827–832, 836.)

The court in *Daugherty*, in upholding a dismissal after Honda's successful demurrer, concluded that the plaintiffs could not state a failure to disclose claim under the CLRA. (*Daugherty, supra,* 144 Cal.App.4th at p. 837.) The plaintiffs did not allege any facts that would establish Honda was "bound to disclose" the engine defect, although the plaintiffs were now on their second amended complaint. (*Id.* at pp. 836, 827.) And Honda did not omit a fact that was contrary to a representation that it did make. (*Id.* at p. 835.) The only representation Honda made was the warranty, and the engines functioned as warranted. (*Id.* at pp. 835–836.) To allow a CLRA claim in these circumstances would be to supplant warranty law; failure of a product to last forever

would become a "defect" and a manufacturer would no longer be able to issue limited warranties. (144 Cal.App.4th at p. 829.)

*Bardin* is similar. It also involved a CLRA lawsuit concerning a car defect that manifested itself after the car's warranty expired. (*Bardin, supra,* 136 Cal.App.4th at pp. 1262–1263; see *Falk, supra,* 496 F.Supp.2d at p. 1094.) The alleged material fact in *Bardin* that the defendant auto manufacturer failed to disclose was that the manufacturer used tubular steel in the exhaust manifolds of certain cars instead of more durable and more expensive cast iron. (*Bardin, supra,* 136 Cal.App.4th at p. 1260.)

In upholding a demurrer dismissal, *Bardin* concluded, "[The] [p]laintiffs' claim for violation of the CLRA fails because the second amended complaint neither alleged facts showing [the defendant auto manufacturer] was 'bound to disclose' its use of tubular steel exhaust manifolds, nor alleged facts showing [the manufacturer] ever gave any information of other facts which could have the likely effect of misleading the public 'for want of communication' of the fact it used tubular steel exhaust manifolds." (*Bardin, supra,* 136 Cal.App.4th at p. 1276.) The complaint in *Bardin* did not allege that the manufacturer made any representations regarding the composition of the exhaust manifolds, did not allege any safety concerns related to the use of tubular steel exhaust manifolds, did not allege that such use violated any warranty or other agreement, and did not allege that the public had any expectation or made any assumptions regarding the composition or the lifespan of exhaust manifolds. (*Id.* at pp. 1270, 1275–1276.) In short, the composition of the exhaust manifolds was an insignificant matter until after the warranty expired.

The complaint before us is unlike *Daugherty* because it does not attempt an end-around the warranty laws. In the complaint, plaintiffs allege: "Both named Plaintiffs suffered data loss and missing files when using their floppy disk drive, during and before the warranty expired. Plaintiff Roma experienced cross[-]computer corruption when he transferred work files from and to work on floppy diskettes." And plaintiffs allege further, "The defect in these FDCs is that they are missing actual physical hardware logic that industry standards require. . . . This is not a situation where the [micro]chip is complete and operational when sold, but wears out or breaks over time because of use and [wear and tear]. Rather, the FDC [D]efect results from [computer hardware] logic that was *never installed* on the chip, thus rendering the chip susceptible to corrupting data and failure to meet industry standards the instant the chip was manufactured . . . ." (Italics added.)

And the present case is also unlike *Bardin.* In *Bardin,* the material comprising the exhaust manifolds was simply immaterial at the time of the

transaction; the manifolds worked in their latent way during the warranty period and nothing was said, implied or assumed about their composition. (See *Bardin, supra*, 136 Cal.App.4th at pp. 1270, 1275.) The same cannot be said for the FDC Defect. Because a floppy disk, at the time of the complaint, was integral to the storage, access, and transport of accurate computer data, the floppy disk was central to the function of a computer as a computer. The exhaust manifolds at issue in *Bardin*, by contrast, were just blowing smoke.

We conclude the complaint states a violation of the CLRA.

## II. The Complaint States a Violation of the UCL

■ The UCL proscribes "unlawful, unfair or fraudulent business act[s] or practice[s]." (Bus. & Prof. Code, § 17200.)

In proscribing unlawful business practices, the UCL borrows violations of other laws and treats them as independently actionable. (*Daugherty, supra*, 144 Cal.App.4th at p. 837.) Our conclusion that the complaint states a CLRA violation means the complaint states a UCL violation as well, under the UCL's "unlawful" prong. (See *Daugherty*, at p. 837.)

■ Additionally, the complaint states a UCL violation under the UCL's "fraud" prong. Unlike common law fraud, a UCL fraud claim "can be shown even without allegations of actual deception, reasonable reliance and damage"; what is required to be shown is "that members of the public are likely to be deceived." (*Daugherty, supra*, 144 Cal.App.4th at p. 838; see *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311–312 [93 Cal.Rptr.3d 559, 207 P.3d 20]; see also *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1254–1257 [99 Cal.Rptr.3d 768].)

"In order to be deceived, members of the public must have had an expectation or an assumption about" the matter in question. (*Bardin, supra*, 136 Cal.App.4th at p. 1275; see *Daugherty, supra*, 144 Cal.App.4th at p. 838.) As we noted in part I. of the Discussion, because a floppy disk, at the time of the complaint, was integral to the storage, access, and transport of accurate computer data, the floppy disk was central to the function of a computer as a computer. Against this backdrop, the public would expect or assume that a computer would contain all of the hardware required for a floppy disk to store, access and transport computer data accurately. But the complaint alleges that this critical hardware was left off the microchip responsible for accurate floppy disk operation, and eMachines knew this material fact but failed to disclose and actively concealed it.

Again, eMachines calls *Daugherty* and *Bardin* to the rescue. Again, eMachines will be disappointed, as these two cases stand too far from the present one to lend any assistance.

*Daugherty* concluded that a claim there under the UCL "fraud" prong could not be stated, observing, "The only expectation buyers could have had about the . . . engine [at issue] was that it would function properly for the length of [defendant] Honda's express warranty, and it did. Honda did nothing that was likely to deceive the general public by failing to disclose that [this] engine might, in the fullness of time [and long after the warranty expired], eventually dislodge the front balancer shaft oil seal and cause an oil leak." (*Daugherty, supra*, 144 Cal.App.4th at p. 838.)

And *Bardin* rejected an alleged UCL fraud-prong claim too, stating, "The second amended complaint did not allege (1) members of the public had any expectation or made any assumptions that DCC's [defendant DaimlerChrysler Corporation] exhaust manifolds would be made from cast iron, as opposed to tubular steel, [or] (2) the public had any expectation or made any assumptions regarding the life span of the exhaust manifold of a DCC vehicle." (*Bardin, supra*, 136 Cal.App.4th at p. 1275.)

We conclude the complaint states a violation of the UCL.

### III. The Complaint States a Claim for Common Law Fraud

The elements of common law fraud in California are (1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990 [22 Cal.Rptr.3d 352, 102 P.3d 268].)

In light of the facts plaintiffs have alleged in their CLRA and UCL counts, they have also stated a common law fraud count. Most pointedly, the alleged corporate directive to keep selling the computers amidst a customer service campaign to keep consumers ignorant of the corporate-known FDC Defect takes care of elements Nos. (1) through (4). As for element No. (5), resulting damage, the trial court concluded that plaintiffs could not allege "any injury in fact" resulting from eMachines's conduct. But the proposed SAC alleges that both named plaintiffs "suffered data loss and missing files when using their floppy disk drive" and that plaintiff Roma "experienced cross[-]computer corruption when he transferred work files from and to work on floppy diskettes."

We conclude the complaint states a claim under common law fraud.

## IV. Restitution Based upon Unjust Enrichment Is Unnecessary

■ Because we have found that plaintiffs' remedies at law are adequate (counts alleged under the CLRA, the UCL, and common law fraud), a claim for restitution, alleging that eMachines has been unjustly enriched by its fraud, is unnecessary. This conclusion follows from the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate. (*Ramona Manor Convalescent Hospital v. Care Enterprises* (1986) 177 Cal.App.3d 1120, 1140 [225 Cal.Rptr. 120]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 1040–1041, pp. 1130–1132; see also *Falk, supra,* 496 F.Supp.2d at p. 1099.)

In light of the adequate legal remedies, we conclude the complaint does not state a claim for restitution based on unjust enrichment.

## DISPOSITION

The judgment is affirmed with respect to the unjust enrichment count and reversed in all other respects. The proposed second amended complaint shall be filed and the matter shall proceed thereon. Plaintiffs are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Blease, Acting P. J., and Duarte, J., concurred.

A petition for a rehearing was denied December 15, 2011, and on December 28, 2011, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied February 15, 2012, S199244.