Filed 5/31/13  Chau v. Chau CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROSEMARY CHAU, Individually and as Trustee, etc., | D059411 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. GIC875156) |
| v. | |
| PAUL CHAU et al., | |
| Defendants and Appellants; | |
| SYSTEMS CONSTRUCTION DESIGN & DEVELOPMENT LLC, | |
| Defendant, Cross-complainant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Law Offices of Elliott Kanter, Elliott N. Kanter and Kourtney Bezanson for Defendants, Cross-complainant and Appellants.

Bartlett & Lievers and Gregory Y. Lievers for Plaintiff, Cross-defendant and Respondent.

Paul Chau, Lana Lee, Systems Construction Design & Development LLC (Systems Construction), and Systems Financial & Realty Development LLC (Systems Financial) (together, defendants) appeal a judgment in favor of Paul's sister, Rosemary Chau. Defendants appeal, contending (1) there was insufficient evidence to support the trial court's finding that they committed fraud, (2) there was insufficient evidence to support the trial court's finding as to which of multiple contracts was the controlling contract, (3) the trial court erred in allowing an amendment to the complaint, and (4) the trial court abused its discretion by failing to issue a proposed statement of decision and judgment. We find defendants' arguments unavailing and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Rosemary sought to purchase a home in San Diego. (Throughout this opinion, we refer to some individuals by their first names as a matter of simplicity and clarity.) Paul and his girlfriend, Lee, urged Rosemary to purchase a small home in Del Mar with the thought that the home would be remodeled. Rosemary closed escrow on the home in October 2002 and paid approximately $850,000 for it.

Paul and Lee encouraged Rosemary to allow Andy Hsu, a contractor and friend of Lee's, to manage the remodel project. While the home was in escrow, Rosemary met with Hsu, Paul and Lee. Rosemary recalled that during that meeting, Hsu stated he would be willing to do the project. According to Hsu, however, he never agreed to work on the project and told Paul and Lee that many times.

2

In December 2002, Paul and Lee presented Rosemary with a Project Management Contract for the remodel (the December Contract). The other party to the December Contract was Systems Financial and it listed Hsu as the project development manager. Paul and Lee told Rosemary that Systems Financial was Hsu's company. However, Systems Financial was actually a company owned and formed by Paul and Lee in November 2002. The company name was very similar to Hsu's business name. According to Rosemary, she would not have entered into the December Contract if Hsu was not going to be involved in the project.

On the day she signed the December Contract, Rosemary gave defendants a check for $100,000 made out to Systems Financial, which was the deposit required by the agreement. In February 2003, Systems Financial paid $98,000 to Pacific World Builders, another company owned by Paul and Lee. Thereafter, Pacific World Builders made significant payments to Paul and Lee. Pacific World Builders never did any work on the remodel project.

According to defendants, Rosemary signed a revised version of the December Contract in March 2003. The amended contract removed any reference to Hsu and instead indicated the project manager was "to be determined." Additionally, the amended contract required Rosemary to pay a $200,000 nonrefundable management fee regardless of whether the project was completed. Rosemary denied signing the amended contract.

In April or May 2003, Paul told Rosemary that a different company, Systems Construction, was taking over the project for accounting purposes. Paul informed

3

Rosemary that Systems Construction was another one of Hsu's companies. Systems Construction was formed in April 2003 with Paul as a 99 percent owner of it. Hsu was never an owner of that company. Around the same time, Rosemary gave defendants a check in the amount of $300,000 made out to Systems Construction. Paul claimed that Rosemary signed a contract with Systems Construction, which replaced the agreement with Systems Financial. Rosemary denied signing a contract with Systems Construction.

Paul prepared all of the contracts on his laptop computer. Defendants claimed the computer along with other records concerning the project were stolen from a shed outside Paul's home. Lee testified she saw Rosemary go into the shed on the day the items were stolen.

In June 2006, Rosemary learned that the building permits on her home had expired. When Rosemary confronted Paul about the permits and where her money was spent, Paul stated there was no money left. Paul and Lee explained that a substantial portion of the work on the project was done by a day laborer that they found at Home Depot. They claimed they paid the day laborer $200,000 in cash. According to an expert, there was only about $65,000 of work done on Rosemary's property.

Rosemary, as trustee for the JRLR Trust, eventually sued defendants for fraud, money had and received, and violation of contractor licensing statutes. The trial court granted Rosemary's motion to amend the complaint to add herself as a plaintiff. After a bifurcated bench trial, the court found the December Contract was the controlling agreement between the parties. In making this finding, the court noted that defendants "deliberately testified untruthfully throughout the trial" and it disregarded their testimony

4

in its entirety. The court found defendants were liable for fraud and money had and received. It awarded Rosemary $701,123.28 in compensatory damages. The court also awarded Rosemary punitive damages of $250 as to Lee and $250,000 as to Paul. Lastly, the court awarded $38,000 in compensatory damages and $200 of additional punitive damages to Rosemary, as trustee of the JRLR Trust.

DISCUSSION

I. *Sufficiency of the Evidence*

A. Standard of Review

Defendants' challenges to the trial court's factual findings and conclusions are reviewed under the substantial evidence standard of review. Under this standard, we review the entire record to determine whether there is substantial evidence supporting the factual determinations. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.) Our review is not limited to appraising " 'isolated bits of evidence selected by the respondent.' " (*Id*. at p. 873.) We are required to accept all evidence which supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the verdict. (*Minelian v. Manzella* (1989) 215 Cal.App.3d 457, 463.) Thus, it is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766.) Credibility is an issue of fact for the finder of fact to resolve (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622) and the testimony of a single witness, even that of a party, is

sufficient to provide substantial evidence to support a finding of fact (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614).

B. Fraud

Defendants argue there was insufficient evidence to support the trial court's finding that they committed fraud. Specifically, they claim Rosemary's testimony that Hsu told her he would work on the project demonstrates defendants did not intentionally misrepresent Hsu's involvement to her. We reject defendants' contention.

In general, the elements of a fraud claim are "(1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Collins v. eMachines, Inc*. (2011) 202 Cal.App.4th 249, 259.)

Here, defendants rely on Rosemary's testimony that Hsu told her he would work on the project. They claim if Rosemary knew at any time that Hsu agreed to be involved in the project, "her entire fraud claim fails because she would have known that [d]efendants did not intentionally misrepresent to her that Mr. Hsu would work on her project." This argument improperly focuses on Rosemary's knowledge rather than defendants' fraudulent conduct and intentions. Specifically, the evidence demonstrated that defendants knew Hsu was unwilling to work on the remodel yet prepared a contract for Rosemary to sign listing Hsu as the project manager. According to Hsu, he informed defendants many times of his unwillingness to be a part of the project, including before the home closed escrow in October 2002. Despite Hsu's unequivocal rejections, Paul and Lee presented Rosemary with the December Contract indicating Hsu was the project manager. This evidence shows

6

defendants misrepresented Hsu's involvement and intended for Rosemary to rely on the false representation. The issue is not whether there is other evidence in the record to support a different finding, but whether there is some evidence that, if believed, would support the findings of the trial court. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429–430, fn. 5.) We conclude there was sufficient evidence to support the trial court's finding of fraud.

C. Controlling Contract

Defendants argue there was insufficient evidence to support the trial court's finding that the December Contract was the controlling contract between the parties. We disagree.

To support their argument, defendants claim Rosemary failed to dispute evidence that her original signatures were on various documents that allegedly superseded the December Contract, including the April 2003 contract with Systems Construction. However, Rosemary did dispute this evidence by denying she signed the Systems Construction contract and stating she only signed one contract. Rosemary's testimony was sufficient to support the trial court's finding. (*In re Marriage of Mix*, *supra*, 14 Cal.3d at p. 614 [testimony of a party is sufficient to provide substantial evidence to support a finding of fact].)

Further, in determining which contract was the valid controlling contract, the trial court concluded defendants' "testimony was not only disingenuous but simply implausible" and disregarded it in its entirety. After reviewing the contracts, the trial court found it of "grave concern" that Paul "managed to squeeze in new terms on the April 2003 contract without the need to change the signature page." It is not our role to redetermine the

7

credibility of the witnesses. (*Reichardt v. Hoffman*, *supra*, 52 Cal.App.4th at p. 766.) Where, as here, the trial court's findings are supported by substantial evidence, we will not disturb them on appeal.

## II. *Amended Complaint*

### A. Additional Background

Rosemary originally pursued her claims against defendants as the trustee of the JRLR Trust. After defendants asserted a lack of standing defense, Rosemary requested to amend her Fourth Amended Complaint (FAC) to add herself as an individual plaintiff. The proposed amendment did not add any new causes of action or damages claims. The trial court granted Rosemary's request to amend the FAC.

### B. Analysis

Defendants argue the trial court erred in allowing Rosemary to amend her FAC because the amendment was barred by the statute of limitations and did not relate back to the original complaint. We reject defendants' contentions.

"The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . ." (Code Civ. Proc. § 473, subd. (a)(1).) "[C]ourts are bound to apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial [citations]," as long as there is no prejudice to the adverse party. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.) We review the

trial court's decision for an abuse of discretion. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296.)

Where the substantive causes of action have not changed, "'[n]o new facts are alleged as a ground of recovery, [and] the only change [is] in the name of the plaintiff and the capacity in which he sues,'" the court should permit the plaintiff to amend the complaint. (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 22.) "The power to permit amendment is denied only if a change is made in the liability sought to be enforced against the defendant. [Citation.]" (*Id*. at p. 20.) Further, "an amendment to substitute in the real party in interest is entitled to relation-back effect." (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1011.)

Here, Rosemary's amendment did not allege any new causes of action or make a change in the liability sought to be enforced against defendants. Additionally, the amendment was based on the same general set of facts as the FAC. Rosemary merely requested to add herself individually as a plaintiff because defendants were challenging her standing to bring claims as the trustee of the JRLR Trust. As the trial court noted, this change "remedie[d] a technical defect in the pleadings to reflect the correct status of the party entering into the contracts with [d]efendants" and was entitled to relation back effect. Further, we are not convinced that defendants were prejudiced by the amendment. Accordingly, the trial court acted well within its discretion in granting Rosemary's request to amend the FAC.

III. *Proposed Statement of Decision*

A. Additional Background

The trial court issued its tentative statement of decision on November 29, 2010 (Tentative Decision). Pursuant to California Rules of Court, rule 3.1590, subdivision (c)(4), the court stated the Tentative Decision would become the statement of decision unless within 10 days a party specified controverted issues or made proposals not in the decision. (All further rule references are to the California Rules of Court.) On December 14, 2010, Defendants objected to the Tentative Decision detailing what they believed were omissions and unsupported findings. Rosemary responded to the Tentative Decision with a request for findings of fact and conclusions of law. A month later, the court issued its statement of decision and judgment in this matter.

B. Analysis

Defendants argue the trial court abused its discretion by failing to issue a proposed statement of decision following the Tentative Decision and not allowing the parties an opportunity to object to a proposed statement of decision and judgment. We disagree.

After the court issues its tentative decision, "any party that appeared at trial may request a statement of decision to address the principal controverted issues." (Rule 3.1590(d).) If a party makes that request, "the court must, within 30 days of announcement or service of the tentative decision, prepare and serve a proposed statement of decision and a proposed judgment on all parties that appeared at the trial, unless the court has ordered a party to prepare the statement." (Rule 3.1590(f).) "Any party may, within 15 days after

10

the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment." (Rule 3.1590(g).)

Here, defendants objected to the trial court's Tentative Decision. Thereafter, the trial court issued its final statement of decision and judgment. In its final statement of decision, the court stated it considered defendants' objections and concluded "the Tentative

. . . Decision did not omit the determination of any material, disputed issue except as otherwise noted [t]herein."  Even if the court was required to issue a proposed statement of decision after defendants objected to its Tentative Decision, defendants have not shown they were prejudiced by the error.  (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 524 ["'While a Rule of Court phrased in mandatory language is generally . . . binding on the courts . . . departure from it is not reversible error unless prejudice is shown.'"].)  On this record, where the parties provided the court with detailed objections to the Tentative Decision, the court considered those objections, and defendants failed to show prejudice, we conclude any error was harmless.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.


MCINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.