Filed 5/6/26  Quillen v. Car City CA2/1
After recall of remittitur

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT
### DIVISION ONE

| | |
|---|---|
| MICHAEL QUILLEN, | B318046 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 17STLC03903) |
| v. | |
| CAR CITY, INC., et al., | ORDER MODIFYING OPINION AFTER RECALL OF REMITTITUR (CHANGE IN JUDGMENT) |
| Defendants and Appellants. | |

THE COURT:

The opinion in the above-entitled matter filed on March 27, 2023 is modified as follows:

1.      In the first sentence of the opinion, the phrase "Defendant and appellant Car City, Inc. (Car City) appeals" is replaced with "Defendants and appellants Car City, Inc. and Chase Bank Finance (collectively, Car City) appeal."

2. On page 3, the entire first sentence under the heading "A. Complaint" is deleted, including footnote 2, and replaced with the following sentence and footnote 2:

Quillen sued Car City in October 2017, alleging causes of action against Car City for fraud and violations of the CLRA and UCL.[2]

The text of footnote 2 referenced in this new sentence shall be as follows:

The complaint also named as a defendant American Contractors Indemnity Company, which is not a party to this appeal, alleging a cause of action against it under Vehicle Code section 11711.

3. The text of footnote 5 is deleted and replaced with the following:

The court awarded no relief against American Contractors Indemnity Company.

4. The disposition is deleted and replaced with the following:

The judgment is reversed as to the CLRA and UCL causes of action, and to the extent it entitles Quillen to collect attorney fees and costs. In all other respects, we affirm. Appellants are awarded their costs on appeal.

These modifications constitute a change in judgment.

| ROTHSCHILD, P. J. | WEINGART, J. |
| --- | --- |

2

Filed 3/27/23  Quillen v. Car City CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL QUILLEN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CAR CITY, INC., et al.,<br><br>Defendants and Appellants. | B318046<br><br>(Los Angeles County<br>Super. Ct. No. 17STLC03903) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen M. Moloney, Judge.  Affirmed in part and reversed in part.

Arno H. Keshishian for Defendants and Appellants.

Law Offices of Michael Geller and Michael S. Geller for Plaintiff and Respondent.

Defendant and appellant Car City, Inc. (Car City) appeals from the judgment in a lawsuit brought by plaintiff and respondent Michael Quillen, alleging Car City committed fraud, violated the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) (the CLRA) and violated the Unfair Competition Law (Bus. & Prof. Code, § 17200) (the UCL) when it sold Quillen a used vehicle.  The trial court ruled in Car City's favor on the fraud claim, but in Quillen's favor on the CLRA and UCL claims, and ordered Car City to pay Quillen attorney fees and costs according to proof.

We agree with Car City that substantial evidence does not support the judgment on the CLRA claim, because the record contains no evidence supporting that the Car City employee statements on which Quillen based that claim were actually false or misleading.  Because the UCL claim is derivative of the CLRA claim, the UCL claim is likewise unsupported by the record.[1] Accordingly, we reverse the judgment to the extent it adjudicates these two causes of action in Quillen's favor and orders Car City to pay Quillen fees and costs.

## FACTS AND PROCEEDINGS BELOW

### A.    *The Complaint*

Quillen sued Car City and others[2] in October 2017, alleging causes of action against Car City for fraud and violations of the

---

[1] Because our conclusion on this issue requires reversal, we need not address Quillen's arguments regarding the court's purported reliance on excluded, inadmissible evidence.

[2] The complaint also named American Contractors Indemnity Company and Chase Bank as defendants, neither of which is a party to this appeal.

CLRA and UCL. All three causes of action were based on the same alleged conduct in connection with Quillen's purchase of a used vehicle (the vehicle) from Car City. Specifically, the complaint alleged that, before Quillen purchased the vehicle, Car City employees assured Quillen it had not been in an accident and was in excellent condition, but that two years later, Quillen learned the vehicle's frame was severely damaged, which made the vehicle unsafe to drive.

## B.    *Trial Testimony and Exhibits*

The record on appeal does not include a reporter's transcript. We therefore base our summary of the evidence presented at trial primarily on the detailed description of this evidence contained in the trial court's "final statement of decision."[3] (Capitalization omitted.)

### 1.    *Quillen testimony and key documents at trial*

Quillen testified that he purchased the vehicle in December 2015. He test drove the vehicle before purchasing it and did not detect any issues during the test drive. He further testified that Alex Oganesyan was the Car City employee with whom he discussed the vehicle before purchasing it, and that Oganesyan initially told Quillen the vehicle had not been in an accident and indicated " 'it was [in] great shape.' " Oganesyan then provided Quillen with a CARFAX report that indicated: (1) "No accident/damages reported to CARFAX"; (2) "No total

---

[3] It is not clear from the record whether all of the documents referenced in the statement of decision were admitted into evidence, something we address further in discussing Car City's arguments on appeal.

loss reported to CARFAX"; and (3) "No structural damage reported to CARFAX." According to Quillen's testimony, Oganesyan later told Quillen: " 'I must come clean since the vehicle was in a bad accident in the past and incurred frame damage.' " Oganesyan then provided Quillen with an AutoCheck report that notes " 'frame/unibody damage' but also indicates no accidents involving the vehicle. The frame damage was reported by an auto auction in September of 2013. According to the AutoCheck report[,] 'a wholesale auto auction has reported that the vehicle has frame damage which can weaken the structure of the vehicle.' "

Quillen testified that he asked to get a third-party inspection of the vehicle, in response to which Oganesyan became upset and would not let the vehicle leave the lot. Quillen nevertheless purchased the vehicle, in part because the certificate of title did not indicate "salvage title," as it would, had the vehicle been salvaged.

An internal Car City document entitled "vehicle disclosure form" (capitalization omitted) includes a list of the following statements, each of which Quillen initialed: "a. The vehicle has prior accident damage that has been repaired; [¶] b. The vehicle has frame damage reported; [¶] c. I have seen the CarFax report; [¶] d. I have seen the AutoCheck report; [¶] e. I have seen the [National Motor Vehicle Title Information System] title report; [¶] f. I have test driven the vehicle; [¶] g. I have physically inspected the vehicle and I have no demands or expectations of the dealer; [¶] h. I have been informed that I have the right to an independent inspection of the vehicle. [¶] . . . [¶] k. I am purchasing the vehicle 'as is' no claim made by the dealer; and [¶] l. I am satisfied with the vehicle's condition." (Underscoring

4

omitted.) Quillen also "initialed and signed this document confirming the representations made [therein]."

Quillen testified that, in April 2017, when the vehicle had approximately 14,000 more miles on it than it had at the time he purchased it (approximately 83,000 miles as opposed to 69,315 miles), Quillen took the vehicle to Big O Tires because the vehicle was not driving straight. Quillen testified he was told that Big O Tires could not align the tires due to frame damage, causing Quillen to have the vehicle inspected at Central Valley Collision Inc., where he "was advised that it would cost in excess of $10,000 to repair the frame damage."

Another estimate for repair from San Francisco Auto Body and Frame Repair Quillen subsequently obtained indicates "VEHICLE NOT SAFE TO DRIVE WITH THE EXTENT OF THE DAMAGES FOUND UNDERNEATH."

### 2. *Oganesyan testimony*

Oganesyan testified that the vehicle at issue "was obtained by Car City . . . as a trade-in for a vehicle that was purchased from them." According to Oganesyan, Car City enlists Steve's Muffler Brakes and Shocks to inspect vehicles "to see if a vehicle is safe to be sold" and to place a value on a vehicle. He testified that a such an inspection report (the Steve's Muffler inspection report) "g[ave] Car City the green light to sell the vehicle." Oganesyan "testified that he did not know if the vehicle needed repairs. Instead, he relied on the safety inspection from Steve's Muffler."

Oganesyan did not remember every detail of his conversation with Quillen, but testified that he was relying on the Steve's Muffler inspection report and AutoCheck report in that conversation. Consistent with Quillen's testimony,

5

Oganesyan testified that he showed Quillen documents indicating the vehicle had frame damage. The documents did not indicate that the frame damage had been repaired. Inconsistent with Quillen's testimony, however, Oganesyan testified that Car City permitted vehicles to be taken up to seven miles away from Car City for independent inspection, and that "it is impossible not to give the 'ok' to take a vehicle off the [l]ot to be inspected." He testified that "about 50 [percent] of Car City's customers asked for and received an independent inspection report," for which Car City pays.

### 3. *Expert testimony*

No expert testimony was presented at trial. Quillen initially designated an expert to testify regarding the "safety and condition of the vehicle" and whether it had been "repaired in a reasonable and safe manner." When Quillen sought to change experts on the eve of trial and without enlisting the proper procedures for doing so, the court did not permit the substitute witness to offer expert testimony.

### C. *Statement of Decision*

The court issued a detailed written statement of decision. With respect to the fraud claim, the court found that Oganesyan had made a misrepresentation in December 2015 "that the [vehicle] was safe to drive." The court based its finding that the vehicle was not, in fact, safe to drive in December 2015 on (1) statements by employees at Big O Tires in 2017, as relayed to the court through Quillen's testimony, and (2) the estimate of repair documents obtained at some point in April 2017 or later that reflected the vehicle was not safe to drive.

6

The court further found, however, that Quillen had "offered no evidence that . . . Oganesyan knew that his statement was false, or that he made the statement with the intent to defraud." To the contrary, the court found "Oganesyan was credible when he testified that he did not know that the car was not safe." The court further found that the Steve's Muffler inspection report was a "reasonable bas[is] for . . . Oganesyan to rely upon when he made the false statement that the vehicle was safe to drive[,]" and that "it was reasonable that . . . Oganesyan did not know that the [vehicle] was not safe to drive because it was not an obvious and readily discovered defect."

The court found that Quillen "was not credible in his account of the business transaction with . . . Oganesyan" and specifically did not find credible Quillen's testimony that Oganesyan had refused to permit Quillen to obtain an independent inspection.

As to the CLRA claim, the court ruled in Quillen's favor. As it had in the context of the fraud claim, the court found Oganesyan had misrepresented that the vehicle was safe to drive, which constituted a "deceptive act[ ] or practice[ ] in the sale of consumer goods" as required for a CLRA violation.

The court acknowledged that Oganesyan had disclosed to Quillen that the vehicle had frame damage, but concluded that "this true statement was made in circumstances that minimized the concern about . . . the vehicle's safety to drive," noting that Oganesyan had "offered misleading information about the vehicle with the CARFAX report showing no accident or frame damage"

7

and initially telling Quillen "the vehicle was not in an accident and was in excellent condition."[4]

Finally, as to the UCL cause of action, the court concluded that the CLRA violation Quillen had established constituted an "unlawful . . . business practice[ ]" supporting the UCL claim. On this basis, it ruled in Quillen's favor on the UCL claim as well.

Accordingly, the court entered judgment in favor of Quillen and against Car City in the amount of $48,763.74, and awarded attorney fees to be established upon noticed motion, and costs pursuant to a proper memorandum of costs.[5]

Car City timely appealed the judgment.

## DISCUSSION

Car City first argues that, in reaching its decision in Quillen's favor on the CLRA and UCL claims, the court relied on two pieces of evidence that had been excluded as inadmissible hearsay: Quillen's testimony regarding what Big O Tire employees told him in April 2017, and an estimate for repair reflecting the damage to the vehicle around that same time. Quillen counters that Car City cannot make this argument, because the record does not establish the trial court actually excluded this evidence. We need not decide whether Car City can establish that the trial court excluded the challenged evidence and/or that the court erred in relying on it, however.

---

[4] As noted in the factual summary, Quillen testified that Oganesyan ultimately did disclose the car had been in an accident before Quillen purchased the vehicle.

[5] The court also ruled in Quillen's favor on the cause of action against Chase Bank Finance, and awarded no relief against American Contractors Indemnity Company.

8

Even assuming the court properly relied on it, the record still does not contain substantial evidence to support all elements of the CLRA and UCL claims, as we explain further below.

### A.  *CLRA Claim*

"The CLRA proscribes particular 'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods or services to consumers.  (Civ. Code, § 1770, subd. (a); see *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 833.)"  (*Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 255 (*Collins*).)  Deception is a necessary component of the conduct proscribed by the CLRA.  (See *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367 [" 'plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive' "]; see Civ. Code, § 1760 [CLRA's "underlying purposes . . . are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection"].)  Although there is no statutory or case law definition of a "deceptive practice" for these purposes, the statute lists numerous examples, including "[r]epresenting that goods . . . have . . . characteristics . . . [which] they do not have."  (Civ. Code, § 1770, subd. (a)(5).)  Courts have also deemed "the concealment or suppression of material facts" to be deceptive, based on principles of fraud.  (See *Collins, supra*, at p. 255.)  It follows that, under the CLRA, even if a representation is true, it may still be deceptive because " '[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable.' [Citation.]"  (*Consumer Advocates v.*

*Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1362; see also *Jones v. Credit Auto Center, Inc.* (2015) 237 Cal.App.4th Supp. 1, 11.)

The deceptive practice on which Quillen based his CLRA claim were Oganesyan's statements that the vehicle was safe to drive and in good condition, which the court found were false, and Oganesyan's informing Quillen about the frame damage in a manner the court found was misleading because it "minimized" the effect of the damage on the car's safety. But in order for these statements to be false and misleading, it must be true that, in December 2015 when Oganesyan made them, the vehicle was *not* safe to drive as Oganesyan claimed and/or that the frame damage was more extensive than Oganesyan led Quillen to believe. But no evidence in the record—not even the evidence Car City argues was excluded—supports either finding. Indeed, the only evidence in the record regarding the vehicle's condition around December 2015 are the CARFAX report, AutoCheck report, and Steve's Muffler inspection report, all of which indicate the vehicle *was* safe to drive. The estimates of repairs in the record and the hearsay testimony regarding what Big O Tires employees told Quillen speak to the condition of the vehicle *in April 2017 or later*. This is not substantial evidence establishing the condition of the vehicle two years and 14,000 miles earlier. Without substantial evidence that the vehicle was in any way unsafe to drive at the time Oganesyan made the challenged statements, the record does not support that Oganesyan's statements to the contrary were false or misleading. (See Civ. Code, § 1770, subd. (a)(5) [deceptive business practice to "[r]epresent[ ] that goods . . . have . . . characteristics . . . [*which*] *they do not have*," italics added].) Nor can Oganesyan be found

10

to have concealed or suppressed a fact if there is no evidence in the record supporting that fact. (See *Collins, supra*, 202 Cal.App.4th at p. 255 [conduct proscribed by CLRA includes concealment of material fact "because fraud or deceit encompasses the suppression of a fact by one who is bound to disclose it, or *the suppression of a fact that is contrary to a representation that was made*," italics added]; *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1258 ["an omission is actionable under the CLRA if the omitted fact is (1) '*contrary to a* [*material*] *representation actually made by the defendant*' or (2) is 'a fact the defendant was obliged to disclose,' " italics added].)

Substantial evidence thus does not support a deceptive practice prohibited by the CLRA, and does not support the court's ruling in Quillen's favor on the CLRA claim.[6]

## B. *UCL Claim*

A UCL claim requires an "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) The court ruled in Quillen's favor on the UCL claim on the basis that Quillen had established Car City violated the CLRA, and thus had engaged in an " 'unlawful' . . . business practice" that harmed Quillen. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; see *ibid.* ["[b]y proscribing 'any unlawful' business practice, 'section 17200

---

[6] Because we conclude substantial evidence does not support the judgment as to the CLRA claim on this basis, we need not address the parties' arguments about whether the CLRA contains a scienter requirement necessitating proof the defendant knew a statement was false in order to establish a deceptive business practice based on a misrepresentation.

[the UCL] "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable"].)  Because substantial evidence does not support the CLRA claim, it likewise does not support an "unlawful . . . business act or practice" under the UCL. (Bus. & Prof. Code, § 17200.)  Nor can we uphold the judgment on the UCL claim on the basis that Oganesyan's statements reflect a fraudulent business practice, as this would be inconsistent with the court's unchallenged finding that Car City did not make a fraudulent statement.  Finally, substantial evidence does not support that Oganesyan's statements were "unfair" for the same reasons substantial evidence does not support that these statements were deceptive:  The record does not reflect that there was anything about the state of the vehicle in December 2015 that Oganesyan misrepresented or failed to disclose to Quillen.

Accordingly, the judgment must be reversed to the extent it adjudicates the CLRA and UCL causes of action in Quillen's favor.

## C.   *Attorney Fees and Costs*

Following our partial reversal, Quillen is no longer the prevailing party as against Car City on any cause of action, and the award of attorney fees and costs against Car City must be reversed as well.  (See *Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402 ["[a]n order awarding costs falls with a reversal of the judgment on which it is based"].)

12

## DISPOSITION

The judgment is reversed as to the CLRA and UCL causes of action against Car City, and to the extent it entitles Quillen to collect attorney fees and costs from Car City. In all other respects, we affirm.

Appellant Car City is awarded its costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


WEINGART, J.

13