Sherida JOHNSON, et al., Plaintiffs,

v.

**NISSAN NORTH AMERICA, INC., Defendant.**

**Case No. 17–cv–00517–WHO**

United States District Court, N.D. California.

Signed 08/29/2017

Crystal Gayle Foley, Simmons Hanly Conroy LLC, El Segundo, CA, Mitchell M. Breit, Paul J. Hanly, Jr., Simmons Hanly Conroy LLC, New York, NY, Adam A. Edwards, Pro Hac Vice, Gregory F. Coleman, Lisa A. White, Pro Hac Vice, Mark E. Silvey, Pro Hac Vice, Greg Coleman Law PC, Knoxville, TN, for Plaintiffs.

Amir M. Nassihi, Andrew L. Chang, Shook Hardy & Bacon L.L.P., San Francisco, CA, Mr. William Roth Sampson, Pro Hac Vice, Shook, Hardy and Bacon LLP, Kansas City, MO, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

William H. Orrick, United States District Judge.

### INTRODUCTION

Plaintiffs allege that the panoramic sunroofs installed in the Nissan vehicles they purchased spontaneously explode and that Nissan refuses to repair, replace, or otherwise compensate plaintiffs with respect to these explosions. They assert a host of claims on behalf of themselves and a California, New York, and nationwide class against defendant Nissan North America, Inc. (Nissan), which now moves to dismiss all claims.[1] Although plaintiffs do not have

---

1. Nissan Motor Co., Ltd. has been dismissed pursuant to stipulation. *See* Dkt. No. 39.

standing to bring a nationwide class and do not plausibly allege an implied warranty claim under California state law, on all other issues I deny Nissan's motion.

## BACKGROUND

Nissan manufactures, markets, and distributes automobiles in the United States. First Amended Complaint ("FAC") ¶ 21 [Dkt No. 32]. Since at least 2008, Nissan has offered vehicles with an optional upgrade of a factory-installed panoramic sunroof. *Id.* ¶ 23. The vehicles with factory-installed panoramic sunroofs at issue in this litigation are Rogue, Maxima, Sentra, Pathfinder, and Altima models from 2008 to the present; Murano models from 2009 to the present; and Juke models from 2011 to the present (collectively, the "Class Vehicles"). *Id.* ¶ 22. The panoramic sunroofs are considered luxury and expensive upgrade options that can cost upwards of one thousand dollars to purchase or repair. *Id.* ¶ 61. Plaintiffs allege that various design and manufacturing decisions have weakened the integrity of the panoramic sunroofs, increasing the probability for the glass to be compromised and result in catastrophic failure, often "explosively." *Id.* ¶¶ 32–33. These design and manufacturing decisions include using tempered glass, thinner glass, ceramic enamels, and increased application of pressure during installation. *Id.* ¶¶ 31–40. Explosions of the panoramic sunroofs pose various dangers, including cuts from shards of glass, damage to the interior of the vehicles, and distraction or startling while driving that could result in car accidents. *Id.* ¶ 63.

At least 105 Nissan vehicle owners have reported to the National Highway Traffic Safety Administration that their Nissan panoramic sunroofs have shattered. FAC ¶¶ 41–42. These complaints have been lodged since as early as 2008. *Id.* ¶48. Plaintiffs allege that Nissan knows about the complaints of shattering panoramic sunroofs since at least 2013. *Id.* ¶¶ 44, 49–52. Nissan conceals and fails to warn consumers about such complaints and the risks associated with panoramic sunroofs. *Id.* ¶¶ 69–72.

Plaintiff Sherida Johnson purchased a certified pre-owned 2016 Nissan Maxima with a panoramic sunroof from CarMax Auto Superstores California, LLC in August 2016. FAC ¶ 85. While she was commuting to work in that vehicle, the panoramic sunroof shattered. *Id.* ¶¶ 90–91. Ms. Johnson was not physically injured. The vehicle was within the limits of the three-year or 36,000–mile warranty. *Id.* ¶¶ 87, 92. However, an employee from a Nissan dealership informed Ms. Johnson that the panoramic sunroof shattering was not covered under the warranty, and Ms. Johnson paid some $185 (after reimbursements from her insurance company) to repair it. *Id.* ¶¶ 98–103. Similarly, plaintiff Subrina Seenarain purchased a certified pre-owned 2014 Nissan Maxima with a panoramic sunroof from Nissan of Garden City in Hempstead, Nassau County, New York. *Id.* ¶ 122. Her panoramic sunroof shattered while she was driving, and she too was told by a Nissan representative that the damage was not covered by her warranty. *Id.* ¶¶ 127–31. Ms. Seenarain paid over $1,000 to repair the damage. *Id.* ¶ 133.

Plaintiffs now bring several claims individually and on behalf of California, New York, and nationwide classes, representing purchasers and lessees of Class Vehicles.[2] These claims are for violation of the Magnuson–Moss Warranty Act ("MMWA"), in-

---

2. Plaintiffs have indicated that plaintiff Harry Gunsenhouser, the named plaintiff representing New Jersey, has decided not to pursue his class claims. Opp. at 2 n.1. Thus, I will not consider Counts Six, Seven, and Eight.

dividually and on behalf of the nationwide class; unjust enrichment, individually and on behalf of the nationwide class; violation of California's Unfair Competition Law ("UCL"), for Ms. Johnson individually and on behalf of the California class; violation of California's Consumer Legal Remedies Act ("CLRA"), for Ms. Johnson individually and on behalf of the California class; violation of the Song–Beverly Consumer Warranty Act, for Ms. Johnson individually and on behalf of the California class; deceptive acts and practices under New York General Business Law Section 349, for Ms. Seenarain individually and on behalf of the New York class; breach of express warranty, for Ms. Seenarain individually and on behalf of the New York class; breach of implied warranty of merchantability, for Ms. Seenarain individually and on behalf of the New York class; and false advertising under the New York General Business Law Section 350, for Ms. Seenarain individually and on behalf of the New York class.[3] Nissan moves to dismiss all of plaintiffs' claims on several grounds.

## LEGAL STANDARD

### I. Rule 12(b)(1)

Under Federal Rule of Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Standing addresses the constitutional requirement that a plaintiff allege a case or controversy, which at an "irreducible minimum," requires three elements: "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

### II. Rule 12(b)(6)

Under Federal Rule of Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

---

**3.** At the hearing on this motion, plaintiffs' counsel noted the Hon. Ricardo S. Martinez's decision in *Lohr v. Nissan North America, Inc.*, No. 2:16–cv–01023, Dkt. No. 31, 2017 WL 1037555 (W.D. Wash. Mar. 17, 2017), involving a putative class in the State of Washington concerning the exploding pan-oramic sunroofs. Judge Martinez also denied, for the most part, Nissan's motion to dismiss. While that decision is consistent with this one, the issues are sufficiently different that they do not warrant an in depth discussion here.

unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This includes CLRA and UCL claims that are grounded in fraud, as well as those aspects of the claims that may be grounded in unfairness or unlawfulness. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009) (holding that, in a case arising under the UCL alleging both fraud and unfairness, "if the claim is said to be 'grounded in fraud' ... the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b)"). To satisfy this standard, a plaintiff must identify the "who, what, when, where, and how" of the misconduct charged, as well as an explanation as to why the statement or omission complained of was false or misleading. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. Whether Named Plaintiffs Have Standing To Maintain a Nationwide Class Action

The first question I must address is two-fold: whether it is appropriate to evaluate the named plaintiffs' standing on behalf of the putative nationwide class at the pleadings (rather than at the class certification) stage, and if so, whether the named plaintiffs have standing to bring state law claims on behalf of a class that includes citizens of unrepresented states.[4] While the parties do not dispute that the named plaintiffs have standing to bring their individual claims, Nissan contends that named plaintiffs may not bring their claims for violation of the MMWA or for unjust enrichment on behalf of a nationwide class that includes citizens of unrepresented states. Plaintiffs argue that having established named plaintiffs' standing, it is inappropriate to address class standing at the pleadings stage. Instead, plaintiffs suggest that this inquiry should be reserved for the class certification stage.

Although the Ninth Circuit has yet to address these specific issues, Nissan cites the decision in *Mazza v. American Honda Motor Co.* in support of its argument. In *Mazza*, a putative class brought suit

---

4. Defendants mistakenly raise this argument under Rule 12(b)(6). Standing is a question of subject matter jurisdiction, and therefore properly raised under Rule 12(b)(1). *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

against Honda for various violations of California state laws. 666 F.3d 581, 587 (9th Cir. 2012). While Honda was headquartered in California and made the alleged misrepresentations in California, the transaction that caused the alleged injury (i.e., the lease or purchase of a Honda automobile) occurred in other states for the majority of class members. *Id.* at 590. The Ninth Circuit reversed the district court's certification of a national class after concluding that, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

Following *Mazza*, I have agreed with my colleagues in this district that "[i]n analogous cases, *Mazza* is not only relevant but controlling, even at the pleading stage." *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016). Accordingly, in *Cover*, I conducted the choice of law analysis at the pleadings stage rather than the class certification stage, and concluded that named plaintiff in that case could not assert state law claims under state laws he did not represent. *Id.* at *5–8.

There is no hard and fast rule to apply. The Hon. Edward S. Chen has noted that "[m]any courts—including a number of courts in this District—have refused to defer consideration of these issues, treating [standing] as a threshold matter that should be addressed at the pleading stage." *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1069 (N.D. Cal. 2015) (citing cases). He also said that the Supreme Court has expressly recognized, in certain contexts, that courts may address class certification prior to resolving standing questions. *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1071 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295,

144 L.Ed.2d 715 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). He concluded, correctly in my judgment, that district courts "ha[ve] the discretion to defer questions of standing until after class certification," but may nonetheless "opt[ ], as a matter of case management," to address standing in advance of class certification. *In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1074.

I join the several other judges in this circuit who have addressed the question and opt here to require that plaintiffs present named class representatives who possess individual standing to assert each state law's claims against Nissan. *See In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1075 (finding that named plaintiffs did not have standing to assert claims from states in which they did not reside or make a relevant purchase); *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322, 2017 WL 440257, at *9–10 (C.D. Cal. Jan. 30, 2017) (dismissing claims based on laws of states other than those represented by named plaintiffs); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213, 2014 WL 1389613, at *6 (E.D. Cal. Apr. 9, 2014) (same). In this case, plaintiffs have two named class representatives in two states purporting to represent a nationwide class, creating the significant burden of nationwide discovery. *See In re Carrier IQ, Inc.*, 78 F.Supp.3d at 1074 ("The Court has reservations of subjecting the [defendant] to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws."); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (adjudicating class-oriented standing questions at the pleading stage, explaining that it declined to "indulge in the prolonged and expensive implications of the plaintiffs' position only

to be faced with the same problem months down the road").

For these reasons, I agree with Nissan that named plaintiffs do not have standing to maintain a nationwide class action. Given that plaintiffs have expressed a willingness to identify additional named plaintiffs to adequately represent class members in other states (they allege that the NHTSA complaints include consumers in 34 separate states), I grant them leave to do so and to amend the pleadings accordingly.

## II. Whether Plaintiffs Sufficiently Allege a Claim for Express Warranty

The next issue is whether plaintiffs have sufficiently pled a claim for express warranty generally, as well as with respect to named plaintiff Subrina Seenarain. Nissan argues that plaintiffs' express warranty claims must be dismissed because its express warranty does not cover design defects. Plaintiffs claim that it does, but also contend that they allege both manufacturing and design defects. Nissan also contends that Ms. Seenarain's claim must be dismissed for the independent reason that she has not sufficiently alleged that her vehicle is covered by Nissan's warranty. I will first address the scope of the express warranty, then address the sufficiency of plaintiffs' allegations.

### A. Whether Nissan's Express Warranty Covers Design Defects

 Nissan contends that its express warranty, which covers "any repairs needed to correct defects in materials or workmanship," does not cover design defects,

necessitating dismissal of plaintiffs' claim. *See* Nissan's Request for Judicial Notice Ex. 1 ("Nissan Warranty"), at 6 [Dkt. No. 36–1].[5] Plaintiffs contend that it does, citing cases that have found otherwise.

Plaintiffs are mistaken on the law. Plaintiffs' own case citations recognize that "[a]n express warranty covering 'materials and workmanship' does not include design defects." *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576, 2012 WL 2861160, at *5 (S.D. Cal. Feb. 13, 2012). Indeed, courts in this district and circuit have repeatedly held that warranties covering "materials or workmanship" do not cover design defects. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F.Supp.2d 1145, 1180–81 (C.D. Cal. 2010); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *11–12 (N.D. Cal. Mar. 14, 2017); *Gertz v. Toyota Motor Corp.*, No. CV 10-1089, 2011 WL 3681647 (C.D. Cal. Aug. 22, 2011), *aff'd sub nom Troup v. Toyota Motor Corp.*, 545 Fed.Appx. 668 (9th Cir. 2013).

Plaintiffs' remaining citations do not establish otherwise. *In re Saturn L–Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008), arose under Indiana law, not California, and the Eighth Circuit's more recent interpretation of Indiana products liability law casts doubt on its validity. *See Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 753–54 (8th Cir. 2013). *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338 (9th Cir. 1989), arose in

---

5. Nissan requests judicial notice of the 2014 Nissan Warranty Information Booklet and plaintiffs do not oppose this request or dispute the document's authenticity. Because plaintiffs' allegations explicitly refer to and rely on Nissan's express warranty and its terms, *see, e.g.,* FAC ¶ 74, I GRANT Nissan's

request for judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Quinto v. JP Morgan Chase Bank*, No. CV-10-5845-JF, 2011 WL 809314, at *2 (N.D. Cal. Mar. 2, 2011).

the context of a homeowner's insurance policy using the phrase "faulty workmanship," not in the context of products liability. Instead, as discussed, courts in this circuit have consistently held that the phrase "materials and workmanship" does not cover design defects in the products liability context. And in *Daniel v. Ford Motor Co.*, the Ninth Circuit recognized the many district courts that have held that the " 'materials and workmanship' language" generally "excludes guarantees against design defects." 806 F.3d 1217, 1224 (9th Cir. 2015). Because Ford's warranty went on to explicitly reference "defects that are introduced during the 'design' process," the Ninth Circuit concluded that the warranty was ambiguous and could reasonably be interpreted to cover both manufacturing and design defects. *Id.* at 1224–25. Nissan's warranty contains no such ambiguity; it does not reference design defects. Because its plain language is clear and unambiguous, I conclude that its warranty does not cover design defects.

### B. Whether Plaintiff Sufficiently Alleges A Manufacturing Defect

■ Plaintiffs' claim may nonetheless survive if they plead a separate defect in manufacturing. Under California law, "[a] defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical products from the same manufacturer." Cal. Jury Instr. (BAJI) No. 9.00.3. "For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect." *Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 429, 143 Cal.Rptr. 225, 573 P.2d 443 (1978). The classic example is "the one soda bottle in ten thousand that explodes without explanation." *Id.* at 428, 143 Cal.Rptr. 225, 573 P.2d 443 (citing *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453, 150 P.2d 436

(1944)). On the other hand, a product is defective in design "if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," or "if there is a risk of danger inherent in the design which outweighs the benefits of that design." BAJI No. 9.00.5. Unlike a manufacturing defect, a design defect "cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design." *Barker*, 20 Cal.3d at 429, 143 Cal. Rptr. 225, 573 P.2d 443.

Defendants argue that plaintiffs' allegations establish a design defect, because plaintiffs take issue with the use of all panoramic sunroofs in Nissan vehicles, all of which include the use of thinner glass and ceramic enamels. Plaintiffs contend that they sufficiently allege a manufacturing defect because they suggest that it is through the tempering process that the glass may be compromised. *See, e.g., id.* ¶ 32 ("If the compressive layer is compromised, however, the entire piece of glass fails catastrophically, and often explosively."); ¶ 33 ("Thinner glass, however, is very difficult to temper properly ...."). Nissan does not dispute that the express warranty and its glass breakage provision cover manufacturing defects.

Plaintiffs' allegations do suggest that the defect is present in all relevant models. *See, e.g.,* FAC ¶ 40 ("In the Nissan models at issue, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand, even when the vehicle and sunroof are brand new."). However, for pleading purposes, I find that their allegations are also sufficient to establish a manufacturing defect. While plaintiffs may not have alleged that the

specific vehicles differ from identical ones from Nissan, plaintiffs have plausibly alleged that these vehicles differ from the product the manufacturer intended to sell; Nissan could not have intended for the panoramic sunroofs to explode. The numerous examples of exploding sunroofs in the First Amended Complaint suggest that these vehicles "c[ame] off the assembly line in a substandard condition." *Barker*, 20 Cal.3d at 429, 143 Cal.Rptr. 225, 573 P.2d 443. This could be due to a defect in manufacturing rather than a design defect. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F.Supp.2d at 1181 ("[T]o the extent that Plaintiffs' breach of express warranty claim is based on allegations other than design defects, they are not barred as beyond the scope of the warranty on 'materials and workmanship.' "). Discovery may show that this defect is one in design, and Nissan is welcome to revisit the issue later in the proceedings. For now, plaintiffs' allegations are sufficient to establish their right to discovery to investigate the potential causes. I DENY Nissan's motion to dismiss plaintiffs' express warranty claim insofar as plaintiffs proceed on a manufacturing defect theory.

### C. Whether Ms. Seenarain Has Sufficiently Pleaded That Her Vehicle Is Covered by Nissan's Warranty

■ Nissan moves to dismiss Ms. Seenarain's express warranty claim for the independent reason that plaintiffs do not allege the original date of purchase nor the mileage of her vehicle, and thus fail to show that it is within the terms of the three-year or 36,000–mile warranty. Plaintiffs argue that their allegation that "[h]er vehicle was within the scope of the Nissan new vehicle warranty at the time the sunroof shattered and at the time of repair," FAC ¶ 135, is sufficient. Because the original date of purchase and the vehicle's mileage are questions of fact, and not legal conclusions, plaintiffs' allegation that her vehicle was within the scope of the warranty will be accepted as true, and is sufficient at this stage of the proceedings. I DENY Nissan's motion to dismiss Ms. Seenarain's express warranty claim.

### III. Whether Plaintiffs Sufficiently Allege Breach of Implied Warranty Claims

Nissan next moves to dismiss Ms. Johnson and Ms. Seenarain's implied warranty claims under the Song–Beverly Consumer Act in California and New York's Uniform Commercial Code Section 2–314, respectively. The law in each state is different; Ms. Johnson's claim cannot proceed, but Ms. Seenarain's can.

### A. Ms. Johnson's Implied Warranty Claim

■ The Song–Beverly Consumer Act provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "Consumer goods" are defined by the act to govern "new" products. Cal. Civ. Code § 1791(a). Section 1795.5, however, extends the Act to used goods, and provides that "[i]t shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new) to maintain sufficient service and repair facilities within this state to carry out the terms of such express warranties." Cal. Civ. Code § 1795.5(a). It further states that "[t]he duration of the implied warranty of merchantability and where present the implied

warranty of fitness with respect to used consumer goods sold in this state, where the sale is accompanied by an express warranty, shall be coextensive in duration with an express warranty which accompanies the consumer goods . . . ." Cal. Civ. Code § 1795.5(c).

Ms. Johnson purchased her car through CarMax, a third-party reseller. "The Act treats new motor vehicles somewhat differently from used motor vehicles." *Dagher v. Ford Motor Co.*, 238 Cal.App.4th 905, 921, 190 Cal.Rptr.3d 261 (2015). Indeed, the only section of the act that applies to used goods is Section 1795.5, which is titled "Used goods; obligation of *distributor or retail seller*; maintenance of service and repair facilities; duration of warranties." Cal. Civ. Code § 1795.5 (emphasis added). The plain language of the section clearly only creates obligations on behalf of "the distributor or retail seller making express warranties with respect to used consumer goods (and *not the original manufacturer* . . .)." Cal. Civ. Code § 1795.5(a) (emphasis added).

In *Dagher*, plaintiff purchased a used car from a private party and subsequently brought suit against Ford Motor Co. under the Act, alleging that Ford had breached its express warranty. 238 Cal.App.4th at 910–11, 190 Cal.Rptr.3d 261. The court found that "even though its written warranty had not yet expired," plaintiff had no recourse under the Act against Ford because the Act "restrict[s] the types of sellers and goods, as well as buyers, that qualify for its protection." *Id.* at 926, 190 Cal.Rptr.3d 261. Ms. Johnson similarly purchased a used car from a third-party, CarMax. While CarMax may have extended express and implied warranties to her, the Act only creates obligations on behalf of CarMax, not on behalf of Nissan.

Plaintiffs cite cases that are inapposite. In *Mui Ho v. Toyota Motor Corp.*, 931 F.Supp.2d 987 (N.D. Cal. 2013), the court did not recognize a claim against the manufacturer for used goods because it did not reach the question. Instead, it dismissed plaintiff's claim because she did not allege that the purchase fell within Song–Beverly's time limits, or that she had purchased her vehicle from a "distributor or retail seller" as required by the Act. *Id.* at 993. Similarly, *Malone v. CarMax Auto Superstores California, LLC*, No. CV14-08978, 2015 WL 3889157 (C.D. Cal. June 23, 2015) did not reach the question of whether purchasers may bring suit against the manufacturer for used goods because the defendant in that case was CarMax, a retail seller. *Id.* at *1–2.

Because the Song–Beverly Act does not create any obligation on behalf of Nissan, the original car manufacturer, with respect to used goods, I GRANT Nissan's motion to dismiss Ms. Johnson's implied warranty claim (Count Five) under the Beverly-Song Act. While leave to amend Ms. Johnson's implied warranty claim would be futile, should plaintiffs identify a different class representative who is able to establish a claim under the Song–Beverly Act, plaintiffs are granted leave to amend their pleadings accordingly.

### B. Ms. Seenarain's Implied Warranty Claim

■■■ New York's Uniform Commercial Code Section 2–314 creates an implied warranty of merchantability "in a contract for [the] sale [of goods] if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2–314(1). As in California, unless plaintiff alleges personal injuries, parties need to be in privity for a claim of implied warranty of merchantability to arise. *See Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 51 A.D.3d 1114, 858 N.Y.S.2d 405, 408 (2008) ("[N]o privity of contract" between parties "render[s]

any claim of breach of implied warranties ineffective as a matter of law.") (internal citation omitted); *see also Wade v. Tiffin Motorhomes, Inc.*, 686 F.Supp.2d 174, 191 (N.D.N.Y. 2009) ("[T]he general rule is that, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty.") (internal quotation marks omitted).

■ However, Ms. Seenarian may overcome a lack of privity by alleging that she is an intended third-party beneficiary of the contracts between Nissan and its dealers. Under New York law, a party asserting rights as a third-party beneficiary must establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *State of Cal. Pub. Employees' Ret. Syst. v. Shearman & Sterling*, 95 N.Y.2d 427, 718 N.Y.S.2d 256, 741 N.E.2d 101, 104 (2000). Federal courts applying New York law have recognized that purchasers of products from dealers or distributors may bring claims for breach of implied warranty against manufacturers as third-party beneficiaries. *See, e.g., Praxair, Inc. v. Gen. Insulation Co.*, 611 F.Supp.2d 318, 330–31 (W.D.N.Y. 2009).

Nissan contends that Ms. Seenarain was not in privity with Nissan (only with the Nissan dealership from which she· purchased her vehicle), nor is she an intended third-party beneficiary of contracts between Nissan and its dealers. Ms. Seenarain claims that she was in actual or constructive privity with Nissan by virtue of Nissan's express warranty, or through Nissan's post-purchase actions. Ms. Seenarain also argues that she is an intended

third-party beneficiary of contracts between Nissan and its dealers and that certain courts applying New York law have similarly found.

I agree with Nissan that it is not in contractual privity with Ms. Seenarain. Plaintiffs cite no case law establishing that the extension of an express warranty to purchasers of a vehicle creates privity directly between an auto manufacturer and the purchaser. Nor does Ms. Seenarain establish that her post-purchase actions give rise to privity. Plaintiffs cite a single case from a Small Claims Court in New York for that proposition. *See Falker v. Chrysler Corp.*, 119 Misc.2d 375, 360, 463 N.Y.S.2d 357 (Civ. Ct. N.Y. Cty. 1983) ("[T]he post purchase actions by defendant[ ] gave rise to a contractual privity relationship with plaintiff, which overcame any original purchase gap in privity.") (internal quotation marks omitted). But like the court in *Kolle v. Mainship Corp.*, I find *Falker* unpersuasive, as well as "inconsistent with the weight of the law in New York." *Kolle v. Mainship Corp.*, No. 04CV711, 2006 WL 1085067, at *5–6 (E.D.N.Y. Apr. 20, 2006) ("As *Falker* is not binding on this Court and also is devoid of any authority in support of its conclusion that privity was created by the post-purchase issuance of warranty materials, this Court declines to follow its holding."). Because Ms. Seenarain purchased her vehicle from a dealer, she cannot establish that she is in privity with Nissan.

Ms. Seenarain's implied warranty claim nonetheless survives because she plausibly alleges that she is an intended third-party beneficiary of the contracts between Nissan and its dealers. She pleads that "Nissan's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the

Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and the New York Class Members." FAC ¶ 282(a). She further pleads, "Plaintiff and the New York Class Members are intended third-party beneficiaries of contracts ·between Nissan and its dealers, franchisees, representatives, and agents." FAC ¶ 282(b). These allegations, which concern the existence of a contract as well as a sufficiently immediate benefit intended for Ms. Seenarain, are sufficient to establish that Ms. Seenarain is an intended third-party beneficiary· under *Praxair*. *See Praxair*, 611 F.Supp.2d at 330–31 (finding that allegations that the manufacturer and seller had "entered into a contract consisting of a distribution agreement to which [plaintiff] was a third-party beneficiary" was sufficient ·to state a claim for breach of implied warranty).

Nissan cited *Marshall v. Hyundai Motor America*, 51 F.Supp.3d 451 (S.D.N.Y. 2014) and *Catalano v. BMW of N. Am., LLC*, 167 F.Supp.3d 540 (S.D.N.Y. 2016) to argue that Ms. Seenarain is not a third party beneficiary under these circumstances, but those cases are not inconsistent with my determination here. In *Marshall*, the . plaintiffs' allegations made no reference to any relevant contract, nor to any facts "from which the Court could infer that the contracts were intended to benefit Plaintiff." 51 F.Supp.3d 451, 469 (S.D.N.Y. 2014). In contrast, Ms. Seenarain references specific "warranty agreements" that "were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles." FAC ¶ 282(a).

In *Catalano*, plaintiff asserted "that he and the other class members were 'intended third-party beneficiaries of the contracts for sale of the Class Vehicles from Defendants to the dealerships who ultimately sold the Class Vehicles to Plaintiff and Class members' and that defendants knew that consumers were the 'end-users of the Class Vehicles." *Catalano v. BMW of N. Am., LLC*, 167 F.Supp.3d 540, 557 (S.D.N.Y. 2016). But the plaintiff· "present[ed] no allegations, other than naked assertions,"· giving rise to such a conclusion. *Id.* In contrast, Ms. Seenarain alleges not only that Nissan's dealers "were not intended to be the ultimate consumers of the Class Vehicles," but also that they "have no rights under the warranty agreements provided with the Class Vehicles." FAC ¶ 282(a). She further alleges that the agreements were instead "designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles." *Id.* As opposed to the allegations in *Catalano*, Ms. Seenarain's allegations focus on the content of the warranty agreements, and not their legal effect. While she does not cite specific provisions from the alleged contracts between Nissan and its dealers, it would be inappropriate to impose such a duty at the pleadings stage, prior to the benefit of discovery.

Although Ms. Seenarain's allegations are similar to those in *Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *6· (E.D.N.Y. Sept. 30, 2015), which supports· Nissan's argument, I disagree with that court's conclusion that ·such allegations are insufficient to state a claim. In *Dixon*, plaintiff alleged "that plaintiff was the intended beneficiary of 'Ford's written warranties and its contractual relationships with Ford dealerships' and that 'Ford's express warranties were designed for and intended to benefit the consumers only.'" 2015 WL 6437612, at *7. Because plaintiff "d[id] not cite any contractual provisions in the alleged contracts" indicating that plaintiff was a third-party beneficiary, the court held that plaintiff's allegations were insufficient under *Praxair*. *Id. Prai-*

*xar*, however, did not create any such obligation to cite specific contractual provisions, nor should plaintiffs have to do so at the pleadings stage, prior to discovery. Ms. Seenarain's allegations that the warranty agreements provide no rights to Nissan's dealers, but instead are designed and intended to benefit purchasers of Nissan vehicles, is facially plausible and sufficient to state a claim under *Iqbal*.

For these reasons, I DENY Nissan's motion to dismiss Ms. Seenarain's claim for breach of implied warranty.

## IV. Whether Plaintiffs Sufficiently Allege Consumer Fraud Claims

Nissan also takes issue with plaintiffs' consumer fraud claims, which arise under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., New York's General Business Laws, Sections 349 (deceptive acts and practices) and 350 (false advertising). I will address the sufficiency of the allegations of each claim.

### A. California's Unfair Competition Law

California's UCL defines "unfair" competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The UCL thus creates "three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *In re Tobacco II Cases*, 46 Cal.4th 298, 311, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009). An "unlawful" business practice is "anything that can properly be called a business practice and that at the same time is forbidden by law." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1254, 99 Cal.Rptr.3d 768 (2009).

To state a claim for a fraudulent business practice, which includes "claims of deceptive advertisements and misrepresentations," "it is necessary only to show that members of the public are likely to be deceived." *Id.* at 312, 93 Cal. Rptr.3d 559, 207 P.3d 20 (internal quotation marks and citations omitted). In alleging a failure to disclose material facts, however, plaintiff must show that the defendant had a duty to disclose those facts. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal.App.4th 1544, 1556–57, 62 Cal.Rptr.3d 177 (2007). A duty to disclose arises only in certain circumstances, including when a defendant "ha[s] exclusive knowledge of material facts not known or reasonably accessible to the plaintiff," "when the defendant actively conceals a material fact from the plaintiff," or "when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 255, 134 Cal.Rptr.3d 588 (2011). A misrepresentation is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action . . . ." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 332, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).

While California courts are split on the proper definition of "unfair" in the consumer action context, the Ninth Circuit has applied both the California Supreme Court's *Cel–Tech* test, requiring that unfairness be tied to a "legislatively declared" policy, as well as the balancing test under *South Bay*. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). Under South Bay's balancing test, a court must weigh the practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the

defendant's conduct against the gravity of the harm to the alleged victim." *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 886, 85 Cal. Rptr.2d 301 (1999).

Ms. Johnson alleges that Nissan violated all three prongs of the UCL. Because this includes the fraud prong, all of these allegations are subject to Rule 9(b)'s heightened pleading requirement. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009) (holding that, in a case arising under the UCL alleging both fraud and unfairness, "if the claim is said to be 'grounded in fraud' ... the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b)").

With respect to the unlawfulness prong of the UCL, Ms. Johnson alleges that the predicate for her claim is Nissan's violation of the CLRA. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1383, 137 Cal. Rptr.3d 293 (2012) ("[A] violation of the CLRA ... may form the predicate 'unlawful act' for the purposes of a UCL claim."). The CLRA proscribes several "unfair methods of competition and unfair or deceptive acts or practices by any person in a transaction," including "[r]epresenting that goods ... have ... characteristics ... that they do not have," "[r]epresenting that goods ... are of a particular standard, quality, or grade, .... if they are of another," or "[a]dvertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770. These practices "include the concealment or suppression of material facts." *Collins*, 202 Cal.App.4th at 255, 134 Cal.Rptr.3d 588. As under the UCL's fraudulent business practices prong, the defendant must have a duty to disclose the material facts at issue. *See Smith v. Ford Motor Co.*, 749 F.Supp.2d 980, 987 (N.D. Cal. 2010); *Klein*, 202 Cal. App.4th at 1382, 137 Cal.Rptr.3d 293 ("The standard for determining whether a representation is 'fraudulent' under the UCL applies equally to claims arising under the CLRA.").

Ms. Johnson alleges that Nissan violated the CLRA through various affirmative misrepresentations, including that "Nissan represents that its vehicles with panoramic sunroofs had characteristics, values, or benefits which they do not have," and that "Nissan advertises its goods with intent not to sell them as advertised." FAC ¶ 187(a)–(e). Ms. Johnson further alleges that Nissan "failed to disclose its knowledge of its panoramic sunroof defect and further failed to disclose the attendant risks associated with that defect at the point of sale or otherwise." FAC ¶ 188.

The First Amended Complaint does not identify any specific affirmative misrepresentation or misleading advertisement on behalf of Nissan with sufficient particularity to survive Rule 9(b)'s heightened pleading requirements. Plaintiffs argue that they have sufficiently pleaded a "nondisclosure case" predicated on "omissions or failure to act." Opp. at 20. Nissan contends that Ms. Johnson cannot establish a concealment or omission claim against Nissan because she cannot allege a transaction with Nissan when she purchased her vehicle from CarMax. Nissan also claims that plaintiffs cannot establish any duty to disclose on behalf of Nissan.

Contrary to Nissan's assertion, the CLRA does not require a direct transaction between plaintiffs and defendants. *See* Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person ...."); *see also McAdams v. Monier, Inc.*, 182 Cal.App.4th 174, 186, 105 Cal.Rptr.3d 704 (2010) ("We also pause here to note that a cause of action under the CLRA may be estab-

lished independent of any contractual relationship between the parties."); *Chamberlan v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1144 (N.D. Cal. 2005) ("Plaintiffs who purchased used cars have standing to bring CLRA claims, despite the fact that they never entered into a transaction directly with Defendant."). While Nissan claims that *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d 1306 (C.D. Cal. 2013), establishes otherwise, Nissan is mistaken. The court in *Ashgari* merely held that where plaintiff failed to allege that defendant had obtained any funds by virtue of an unfair business practice, plaintiff could not bring a claim for restitution under the UCL. *Id.* at 1323–25.

Ms. Johnson's allegations that Nissan had a duty to disclose further information about the panoramic sunroofs are plausible. The panoramic sunroofs' alleged "propensity to spontaneously shatter, endangering the personal safety of drivers," is undoubtedly a material fact, which is further bolstered by the allegation that "[h]ad Nissan disclosed that information," plaintiffs "would not have purchased Class Vehicles or would have paid significantly less for them." FAC ¶ 180. Nissan's failure to disclose this propensity, in conjunction with its advertising of the panoramic sunroof feature, are sufficient to allege that Nissan has either "actively conceal[ed] a material fact" or that Nissan "ma[de] a partial representation[ ] that [was] misleading because some other material fact ha[d] not been disclosed." *Collins*, 202 Cal. App.4th at 255, 134 Cal.Rptr.3d 588.

Because Ms. Johnson's allegations are sufficient to state a claim under the CLRA based on the deceptive act of fraudulent omissions or concealment, Ms. Johnson has likewise stated a claim under the unlawfulness prong of the UCL. The same allegations establish that Ms. Johnson has stated a claim under the fraudulent business

practices prong of the UCL as well. *See Kelin*, 202 Cal.App.4th at 1382, 137 Cal. Rptr.3d 293 ("The standard for determining whether a representation is 'fraudulent' under the UCL applies equally to claims arising under the CLRA."). For these reasons, I DENY Nissan's motion to dismiss Ms. Johnson's claim under the UCL.

### B. California's Consumer Legal Remedies Act

Ms. Johnson brings a separate claim for violation of the CLRA in Count Four of the First Amended Complaint. For the reasons stated above, Ms. Johnson's allegations are sufficient to state a claim under the CLRA based on fraudulent omission or concealment and may proceed.

### C. New York General Business Law Sections 349 (Deceptive Acts and Practices) and 350 (False Advertising)

New York's General Business Law, Section 349, declares unlawful "[d]eceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349. Section 350 likewise deems "false advertising in the conduct of any business, trade or commerce" unlawful. N.Y. Gen. Bus. L. § 350. In order to state a claim under Section 349, a plaintiff must allege "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes–Spirits.Com, Inc.*, 12 N.Y.3d 616, 883 N.Y.S.2d 772, 911 N.E.2d 834, 838 (2009). The requirements under Section 350 are substantially the same. *See Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D. 2d 608, 609, 752 N.Y.S.2d 400 (N.Y. App. Div. 2002). An act is "consumer

oriented" when "the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995).

Plaintiff need not establish defendant's intent to defraud or mislead in order to state a claim, nor need plaintiff establish justifiable reliance. *Id.*, 623 N.Y.S.2d 529, 647 N.E.2d at 745. New York courts have adopted "an objective definition of deceptive acts and practices, whether representations or *omissions*, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (emphasis added); *see also Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 777 N.Y.S.2d 50, 55 (2004) ("[T]o prevail in a cause of action under GBL §§ 340 and 350, the plaintiff must prove that the defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in plaintiff's circumstances, that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury.").

While Nissan contends that a claim under Section 349 is actionable "only" if the defendant withheld information that it alone possesses, citing *Oswego*, Nissan misconstrues that case. *Oswego* reasoned that while the law does not create an affirmative duty on behalf of businesses "to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation," "[t]he scenario is quite different ... where the business alone possesses material information that is relevant to the consumer and fails to provide this information." 623 N.Y.S.2d 529, 647 N.E.2d at 745. Plaintiffs have no burden to establish that defendants "alone" possessed material information; instead, when plaintiffs do allege

such facts, *Oswego* suggests that the law imposes a higher burden on defendants.

Nissan next argues that Ms. Seenarain cannot establish causation, which is necessary to proceed on a claim under either Section 349 or 350. *See Oswego*, 623 N.Y.S.2d 529, 647 N.E.2d at 745; *Andre Strishak*, 300 A.D. 2d at 609, 752 N.Y.S.2d 400. Ms. Seenarain alleges that she "did a significant amount of research before deciding upon her [Nissan vehicle]," including speaking "at least with automobile sales representatives from Garden City Nissan who assured her that the certified pre-owned Maxima met her requirements for safety, reliability, and economy." FAC ¶ 123. She also states that "[t]he panoramic sunroof feature was then the clincher for Ms. Seenarain because it was a beautiful feature that purported to improve the driving experience for driver and passengers," and that she "spent more money on a car for the panoramic sunroof upgrade." *Id.* She further asserts that "[d]uring her research, Ms. Seenarain did not encounter any information indicating that a panoramic sunroof could be dangerous. Nor did she observe any warnings about the potential for this type of sunroof to spontaneously explode." FAC ¶ 126. Finally, she adds that she "would not have purchased [a Nissan vehicle] at all or else paid less for the [vehicle] but for Nissan's false advertising." FAC ¶ 305. These allegations sufficiently plead a material omission in Nissan's advertising as well as sales practices, and if Ms. Seenarain been informed of them, she would not have incurred the relevant injury. For these reasons, I DENY Nissan's motion to dismiss Ms. Seenarain's consumer fraud claims.

## V. Whether Plaintiffs' Equitable Claims Show a Lack of Adequate Remedy at Law, or That They Would Suffer Irreparable Injury

Finally, I address whether plaintiffs have sufficiently pleaded that they are

entitled to equitable relief. Plaintiffs seek various forms of equitable relief, including restitution, FAC ¶ 350(C), disgorgement, *id.* ¶ 350(D), and "an order enjoining Nissan from continuing to sell vehicles with defective panoramic sunroofs," *id.* ¶ 10. Nissan moves to dismiss plaintiffs' equitable claims, contending that plaintiffs have shown neither a lack of adequate remedy at law, nor irreparable injury.[6] With respect to the adequacy of the remedy at law, plaintiffs contend that they may assert their claims for equitable relief in the alternative. They do not respond with regards to irreparable injury.

While it is true that "a court should determine the adequacy of a remedy in law before resorting to equitable relief," *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), it is premature to make this determination now. While plaintiffs assert claims for both damages and equitable relief, at least some of plaintiffs' claims for equitable relief are based on a fraudulent concealment theory, separate and apart from their breach of warranty theory based on manufacturing defect. The warranty claims for which plaintiffs seek damages concern the scope of the warranty agreement and whether it covers the defects in the panoramic sunroofs, whereas the fraudulent concealment claims allege that Nissan's sales and advertising are deceptive and misleading due to material omissions. Because I have found that plaintiffs have sufficiently pleaded actionable claims under the fraudulent concealment theory, plaintiffs may seek recovery in the form of equitable relief for those claims. *See Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 933 (N.D. Cal. 2012) ("Here, plaintiff indicates that his restitution claim is based on Apple's alleged fraud, and is pleaded in the alternative to his breach of contract claims. The court agrees that if plaintiff prevails on his consumer protection claims but not under a contract theory, he may seek recovery in the form of restitution.").

Finally, I disagree with Nissan that plaintiffs have failed to show a threat of irreparable harm. Nissan contends that because plaintiffs' vehicles have been repaired, they cannot establish that further damage is imminent or likely. But plaintiffs clearly allege that the repairs or replacements of their panoramic sunroofs do not address the alleged defect, and carry the same risk of shattering. *See, e.g.,* FAC ¶ 42(t) ("Sunroof exploded twice ..., [o]nce on July 20th 2016 and once on August 15 2016 after being replaced with OEM parts."); *id.* ¶ 72 ("[D]rivers who have experienced an exploding sunroof and bring their vehicles to a dealership for repairs are not told that identically defective sunroofs are installed as replacements in their vehicles."). Moreover, plaintiffs have alleged that they remain in fear of driving their vehicles because of the risk of repeat shattering. *Id.* ¶ 105 ("Ms. Johnson is afraid the replacement sunroof will explode like the original one did. She has not used her sunroof since the replacement panoramic sunroof was installed due to this fear."); *id.* ¶ 106 ("Ms. Johnson is now scared to drive her vehicle."); *id.* ¶ 134 ("Ms. Seenarain is anxious driving the 'repaired' Maxima, fearful that the sunroof will again explode."). These allegations are sufficient to establish a threat of further damage that is imminent or likely at this stage.

---

6. Because plaintiffs do not dispute that they must show both of these factors, I analyze them below without accepting that they are necessarily required for all forms of equitable relief.

For these reasons, I DENY Nissan's motion to dismiss plaintiffs' equitable claims.

## CONCLUSION

For the reasons stated above, I GRANT IN PART and DENY IN PART Nissan's Motion to Dismiss Plaintiffs' First Amended Complaint. More specifically, I GRANT Nissan's motion to dismiss plaintiffs' nationwide class allegations and Nissan's motion to dismiss Ms. Johnson's implied warranty claim under the Song–Beverly Act (Count Five) with leave to amend. I DENY Nissan's motion to dismiss the remaining claims. Plaintiffs have twenty (20) days to amend.

**IT IS SO ORDERED.**